UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| KEVIN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-619 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| KENT COUNTY SHERIFF'S DEPARTMENT, et al., | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| | ) | |

This is a civil rights action filed by a state prisoner. The events giving rise to plaintiff's lawsuit occurred on September 13, 2005, while plaintiff was a detainee at the Kent County jail. Plaintiff had been arrested earlier that day by City of Grand Rapids police officers on a Michigan State Police warrant for a home invasion that had occurred in Allegan County. The defendants are the Kent County Sheriff's Department and Corrections Deputies John Cooper, Adam Minnick, and Matthew Dziachan.[1] Plaintiff alleges that defendants used excessive force against him violation of his Fourteenth Amendment rights (1) when plaintiff was being searched in the jail's shakedown vestibule before being introduced into a holding cell, and (2) when plaintiff was in the jail's sallyport while being escorted to a Michigan State Police trooper's car for transportation to Allegan County. Plaintiff's amended complaint also alleges state-law assault and battery claims

---

[1] Plaintiff's claims against the other defendants named in his first amended complaint were dismissed by the court with prejudice pursuant to stipulation of the parties. (docket #'s 73, 74).

against defendants Cooper, Minnick, and Dziachan. (docket # 32, ¶¶ 47-51). Plaintiff seeks an award of monetary damages.

On June 28, 2007, defendants filed a motion for summary judgment. (docket # 75). The motion is before me pursuant to an order of reference (docket # 7) for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiff filed his response on July 27, 2007. (docket # 78). On August 21, 2007, I conducted a hearing on defendants' motion for summary judgment and plaintiff's request for leave to file a second amended complaint adding Kent County as a defendant. For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted in part and denied in part. I recommend that defendants' motion be granted as to defendant Kent County Sheriff's Department. I recommend that the remainder of defendants' motion for summary judgment be denied. I further recommend that plaintiff's request for leave to amend his complaint be denied.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "'In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party.'" *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006)(quoting *Matsushita*, 475 U.S. at 587); *see Keweenaw Bay Indian Community v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007); *Roberts v. Ward*, 468 F.3d 963, 971 (6th Cir. 2006); *see also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)("The district court errs by granting summary judgment where issues of credibility are determinative of the case."); *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006)("In determining whether to grant summary judgment, a court may not make determinations of witness credibility.").

## **Proposed Findings of Fact**

The parties prevent vastly different versions of the events surrounding the use of force by defendants against plaintiff on September 13, 2005 in the Kent County jail's shakedown vestibule and sallyport. Plaintiff gave sworn deposition testimony that he offered deputies no physical resistance. The depositions of defendants Cooper, Minnick and Dziachan describe how plaintiff was a problem detainee of significant size and strength, who offered deputies physical and other forms of resistance, necessitating the use of some force against plaintiff in order to maintain order and security.

The facts regarding plaintiff's arrest and transportation to the Kent County jail on September 13, 2005, are not disputed.[2] Officers from the Grand Rapids Police Department arrested plaintiff[3] and transported him to the Kent County jail. (Plf. Dep. at 21). The Grand Rapids police escorted plaintiff into the Kent County jail's intake lobby. (Plf. Dep. at 22-23). The jail's intake lobby video camera recorded footage that has been submitted as an exhibit. (docket # 78, Ex. D). Plaintiff's handcuffs were removed. He was directed to empty his pockets, take the shoestrings out of his shoes, and place his personal items into an envelope. (Plf. Dep. at 24). Plaintiff admittedly refused to answer the questions he was being asked during the booking process. (*Id.* at 27).

Plaintiff is a very large man. By his own estimate, on September 13, 2005, he weighed 285 pounds. (Plf. Dep. at 44). Defendant Cooper instructed plaintiff to remove his shoes. (Cooper Dep. at 20). The videotape shows that plaintiff responded by kicking off his shoes. Deputy Cooper asked plaintiff to pick up his shoes and hand them to Cooper. (Cooper Dep. at 20). Plaintiff refused. (Plf. Dep. at 26-27). Plaintiff testified that defendants then pulled him into the shakedown vestibule and slammed him up against the wall. (Plf. Dep. at 27). The videotape does not conclusively show what plaintiff or defendants were doing inside the shakedown vestibule. Plaintiff testified that he offered no resistance. Plaintiff states that defendants pushed one of his legs pushed up behind his back, pushed an arm up behind his back and twisted it, and subjected plaintiff to an unnecessarily rough shakedown (Plf. Dep. at 28). Plaintiff testified that he was not injured during

---

[2]September 13, 2005, was not plaintiff's first confinement in Kent County jail. He had previously been held on the basis of a probation violation, awaiting his transfer into the custody of the Michigan Department of Corrections. (Plf. Dep. at 11).

[3]Plaintiff was later convicted of a misdemeanor charge of third-degree home invasion and sentenced to six months in the Allegan County jail. (Plf. Dep. at 12). Plaintiff was returned to prison because he had violated the terms of his parole. (Plf. Dep. at 11, 13).

this initial confrontation with defendants. (Plf. Dep. at 47). Defendants state that plaintiff was physically resisting and making verbal threats, and that they only used that force reasonably necessary to search plaintiff before introducing plaintiff into one of the jail's holding cells. (Cooper Dep. at 21-23; Minnick Dep. at 14-16, 29-31).[4]

Later than evening, Trooper Tim Permoda of the Michigan State Police arrived at the Kent County jail. Trooper Permoda was responsible for transporting plaintiff from Grand Rapids to the Allegan County jail. Permoda was not accompanied by any other state police officer to assist him in that night's transportation duty. Plaintiff is much larger than Trooper Permoda. Permoda asked that plaintiff be placed in leg shackles for transportation purposes. (Permoda Dep. at 47). Defendants Cooper, Minnick and Dziachan escorted plaintiff from his cell, through the intake lobby, and out to Permoda's car in the jail's sallyport. The video footage is limited to the escort through the lobby. Plaintiff testified that just outside the lobby in the jail's sallyport, outside the range of the camera, defendants slammed him up against the wall and jammed a thumb under plaintiff's cheekbone. (Plf. Dep. at 34-35). Plaintiff claims that he eventually felt his right wrist pop. Plaintiff testified that he yelled, dropped to the ground, and was picked up by defendants. (Plf. Dep. at 35-37). Defendants state that plaintiff offered resistance, that he was simply held in place until he was secured inside Trooper Permoda's car, and they used only that force necessary to restrain plaintiff. (Cooper Dep. at 27-36; Minnick Dep. at 22-29; Dziachan Dep. at 31, 35-51).

While in transit to Allegan County, plaintiff began making complaints that his wrist hurt, and stated that he wanted Trooper Permoda to take him to the hospital. (Permoda Dep. at 36).

---

[4] Matthew Dziachan testified at his April 2007 deposition that his first encounter with plaintiff did not occur until after plaintiff had been placed in the holding cell. (Dziachan Dep. at 25-27).

Plaintiff claims that defendants broke his right wrist during the second physical confrontation. (Plf. Dep. at 35, 48). X-rays taken at Allegan General Hospital on the night of September 13, 2005 did not reveal any evidence of any recent fracture. (docket # 76, Exs. 2, 3). Officer Permoda transported plaintiff from the hospital to the Allegan County jail. (Permoda Dep. at 40-41). Plaintiff filed this lawsuit on August 29, 2006.

**Discussion**

**1.**

The Kent County Sheriff's Department is not a legally recognized entity subject to suit. *See Roodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991); *see also Dumitrescu v. Hana*, No. 05-cv-72791-DT, 2007 WL 1017324, at * 4 (E.D. Mich. Mar. 30, 2007); *accord Lindsey v. Thomson*, No. 06-7114, 2007 WL 2693970, at * 3 (10th Cir. Sept. 10, 2007)("Sheriff's departments and police departments are not usually considered legal entities subject to suit."); *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006); *Whiting v. Marathon County Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004). I recommend that defendants' motion be granted and all plaintiff's claims against the Kent County Sheriff's Department be dismissed.

**2.**

Plaintiff's brief contains a request for leave of court to file a second amended complaint adding Kent County as a defendant. (Plf. Brief at 12, docket # 78). I recommend that plaintiff's request be denied. Plaintiff's motion came far too late. The court's December 21, 2006 case management order (docket # 28) established a February 1, 2007 deadline for motions to join parties or amend pleadings. "Once the scheduling order's deadline passes, a [party] first must show

good cause under Rule 16(b) for failure to earlier seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *see Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). Plaintiff has not addressed or shown the "good cause" necessary to alter the court's case management order.

Alternatively, plaintiff's requested amendment could not withstand a motion to dismiss, and should be denied on the basis of futility.[5] Plaintiff seeks leave to amend the complaint to add Kent County as a defendant. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), the Supreme Court held that municipalities may not be held liable on a *respondeat superior* theory. 436 U.S. at 691. Liability may only be found against a municipality when its employees have acted pursuant to an official policy or custom. *Id.* at 694-95; *see Graham ex rel. Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997) (citations omitted). "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality. The plaintiff must

---

[5]"A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'" *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)(quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir.1986)); *see Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). In adjudicating a claim of futility, the court should use the standard applicable to motions to dismiss, accepting well-pleaded allegations as true. *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980).

also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. "There must be a direct causal link between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation. These stringent standards are necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Graham*, 358 F.3d at 383 (citations omitted). "A plaintiff asserting a § 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of execution of that policy." *Graham*, 358 F.3d at 383.

Plaintiff claims that defendants Cooper, Minnick, and Dziachan violated his constitutional rights when they used unnecessary physical force against him in the shakedown vestibule and sallyport when plaintiff was not resisting. His motion for leave to amend is not based on an assertion that Kent County had a municipal policy or custom of using physical force against a non-resisting detainee. Rather, plaintiff seeks to amend the complaint to reflect his objection to a "custom" of allowing "the use of three deputies, handcuffs, and leg irons to escort a detainee to a transport vehicle." (Plf. Brief at 13-14 and Ex. K ¶ 25). The handcuffing of detainees during out-of-cell movement is commonplace. Outnumbering detainees with law enforcement officers during out-of-cell movement is likewise a common and reasonable security measure. The practice significantly reduces the likelihood that the detainee being transported will attack his escorting officers or attempt escape, thereby reducing the risk of injury to the detainee, escorting officers, and third parties. Finally, the use of leg shackles in this case was not the result of any municipal policy or custom, but

rather came at the request of Trooper Permoda -- the officer who was faced with the daunting task of transporting the much larger plaintiff at night, with no other trooper in the vehicle to provide assistance. Finally, there is no direct causal link between the purported municipal customs and the injury plaintiff claims to have suffered. Plaintiff claims that defendants used excessive force and that he offered no resistance, not that he was provoked into resisting by the presence of a large security escort and physical restraints. Because plaintiff's proposed amendment could not withstand a motion to dismiss, I recommend that it be denied on the alternative basis of futility.

### 3.

Defendants Cooper, Minnick, and Dziachan seek entry of judgment in their favor on qualified immunity and other grounds. "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006); *see Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003). In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). More recently in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), the Supreme Court emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Silberstein v. City of Dayton*, 440 F.3d

306, 311 (6th Cir. 2006); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 909 n.5 (6th Cir. 2005) ("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").

"In addressing an excessive force claim brought under § 1983, analysis begins with identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "In most instances, that will either be the Fourth Amendment's prohibition against unreasonable searches and seizures of the person. or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id.* "Pretrial detainees held in the jail are protected under the Fourteenth Amendment, which provides that 'a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994)(quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Sixth Circuit "has made clear that such detainees are thus entitled to the same Eighth Amendment rights[6] as other inmates." 29 F.3d at 242. Thus, Eighth Amendment analysis applies

---

[6] The Eighth Amendment's Cruel and Unusual Punishments Clause "was designed to protect those convicted of crimes, and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986)(citations and internal quotations omitted). The Sixth Circuit has likewise made it pellucid that, "The Eighth Amendment does not apply to pretrial detainees," but the protections provided by the Fourteenth Amendment's Due Process Clause are "analogous to the Eighth Amendment rights of prisoners." *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003); *see Boone v. Spurgess*, 385 F.3d 923, 933 (6th Cir. 2004).

to excessive force claims by a pretrial detainee, albeit through the Fourteenth Amendment's Due Process Clause. *Id.*

An Eighth Amendment claim consists of objective and subjective components. With regard to the objective component, it must be determined whether the deprivation was, "objectively, 'sufficiently serious'" to offend constitutional standards. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component of an Eighth Amendment claim is "contextual." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Physical contact is necessary for purposes of jail security and order during the processes of escorting detainees and searching them for dangerous items before introducing detainees into the jail population. Thus, not every push or shove offends constitutional standards. *See Hudson v. McMillian*, 503 U.S. at 9; *accord Brikho v. Horan*, 146 F. App'x 13, 15 (6th Cir. 2005). The federal courts have long held that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See, e.g., Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir. 1973). However, the Supreme Court made clear in *Hudson v. McMillian* that guards may not inflict an unjustified beating upon a prisoner and then seek to defend their actions by the lack of serious or life-threatening injuries. 503 U.S. at 9. In assessing the record to determine whether there is any genuine issue of material fact, the court cannot make credibility judgments and must view the evidence in the light most favorable to the non-moving party. *See General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006). Plaintiff testified in his deposition that he offered no resistence and that all the force used against him was gratuitous. If plaintiff's testimony is believed,[7] a reasonable trier

---

[7]Defendants argue that, "Mr. Williams has made numerous inconsistent and contradictory statements" and that his "credibility as a witness is highly questionable." (Defendant's Brief at 2). This observation will be relevant at trial, but not at the summary judgment stage. The court cannot

of fact could find in his favor on the objective component of an Fourteenth Amendment claims against each defendant.

The subjective element of an Eighth Amendment excessive force claim is the requirement that the defendant have a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 5. The plaintiff is required to show that the defendants acted "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Id.* at 6 (quoting *Whitley*, 475 U.S. at 320-21); *see Leonard v. Hoover*, 76 F. App'x 55, 57 (6th Cir. 2003); *Carson v. Harrington*, 12 F. App'x 299, 301 (6th Cir. 2001). "In determining whether the use of force was wanton and unnecessary, it may be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of the forceful response." 503 U.S. at 7 (internal quotations and citations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321; *see Johnson v. Perry*, 106 F. App'x 467, 469 (6th Cir. 2004). Plaintiff testified that he offered no physical resistance, yet was subjected to gratuitous physical abuse by defendants both in the shakedown vestibule and in the sallyport. The videotape does not resolve this issue, and the testimony of plaintiff is at odds with the affidavits of the officers. Applying the aforementioned summary judgment standards, I find that a reasonable trier of fact could find in plaintiff's favor on the subjective component of Fourteenth Amendment claims against each defendant.

---

make credibility determinations when ruling on the defendants' motion for summary judgment.

The remaining inquiry in the qualified immunity analysis is whether plaintiff has alleged and supported with evidence a violation of clearly established law. In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v.*

*Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[8] in light of pre-existing law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569.

The facts stated in plaintiff's deposition, if believed, establish violations of clearly established law. An officer's use of excessive force against an unresisting prisoner is clearly a violation of federally guaranteed rights. *See Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002); *accord Lustig v. Mondeau*, 211 F. App'x 364, 371 (6th Cir. 2006).

**4.**

Defendants' brief contains a relatively short argument regarding plaintiff's state-law assault and battery claims. Defendants argue that plaintiff failed to submit sufficient evidence on the "intent" element of both torts to survive a motion for summary judgment. (Def. Brief at 11-12). An assault is "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact" and a battery is "the wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Smith v. Stolberg*, 586 N.W.2d 103, 105 (Mich. Ct. App. 1998). Again, if plaintiff's deposition testimony is believed, a reasonable trier of fact could

---

[8]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

find in plaintiff's favor on the intent element of assault and battery claims against defendants Cooper, Minnick, and Dziachan.

## Recommended Disposition

For the reasons set forth herein, I recommend that defendants' motion for summary judgment (docket # 75) be granted in part and denied in part: granted with regard to defendant Kent County Sheriff's Department and denied in all other respects. I further recommend that plaintiff's motion for leave to amend his complaint be denied.

Dated:  October 10, 2007           /s/  Joseph G. Scoville
                                   United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).